May it please the Court, my name is Mike Rossi on behalf of Petitioner Ms. Norma Orantes-Barrera. The ultimate question in this case is whether the immigration judge violated the petitioner's right to a full and fair hearing by refusing to consider her testimony on cross and redirect by misapplying GRAVA v. INS, and whether he failed to effectively make a credibility finding by conflating what he may have intended as an adverse credibility finding based on long pauses, hesitations, and breathing difficulties with a finding that the petitioner failed to prove past a well-founded fear of persecution. Mr. Rossi, one of the problems that we have as an appellate court in reviewing an immigration judge's demeanor finding is, other than maybe a reflection of a pause in the witness's answer, there's nothing I can look at in the words of the transcript that reproduce what the immigration judge was seeing. And we've all had experiences as trial lawyers with the witness who makes the long pause, which is quite incriminating in the eyes of the fact finder, as if they're trying to make up an answer. And so how do we get over the adverse credibility finding based in part on demeanor? Right. That's a very good point. Especially when, especially given the standard of review. That's correct. That's correct, Judge Smith. Well, assuming that the judge actually made a credibility finding in this case, which we're arguing that he didn't explicitly make a credibility finding. If you look at it in his decision, he does make certain points. He says that he, the judge found the petitioner credible regarding her encounters and terrible injuries that her father suffered, but found that also the long pauses were an indicia of lack of candor. Those are his words. So he doesn't really make an actual credibility finding in this, in his decision. But assuming. Well, wait a second. On page 8ER54, he does have a statement at the bottom of that paragraph at the top of the page where he's characterizing her testimony. And then he says, the other aspects where she attempts to elevate or lift her claim to a protected basis and on account of a protected ground is the portion that I cannot find credible. I mean, that's clearly an adverse credibility finding. I mean, it's similar to what we tell the juries. You can disregard all of the testimony, you can accept all of it, or you can pick and choose what you're going to believe and what you're not going to believe. But the problem here is that he is making an adverse credibility finding on that portion of the asylum claim, which is central to the heart of her claim that on a protected ground she suffered adverse persecution. Right. And he does that, Your Honor, based on the fact that he found that she went beyond grava. That was the portion that was on redirect, and he says that I don't find that testimony credible because it was inconsistent with her declaration. Her declaration did not indicate why her father was actually harmed when she tried to expand on that on redirect. He says in his decision that she can't have it both ways, basically. His words were, the judge's words were, I believe the Petitioner wants it both ways. She wants to have grava, but she doesn't – she also wants us to credit her testimony on redirect. But I'm not going to credit that testimony. I'm going to find her incredible because she was inconsistent with her declaration, and therefore, I'm going to deny it based on that. You're not taking the position, are you not, that the immigration judge cannot consider what she says in her declaration versus what she says in testifying before him? Isn't that an appropriate comparison to make between the answers that she gave in the hearing versus what she said in the application? I think that's absolutely correct. In fact, they should consider what she gave in the testimony as well as what she – what information she provided in her declaration. Here, the declaration was not inconsistent. It just – it was incomplete, meaning that she gave more information on redirect that would expand it on the information in the declaration, basically why her father was – was harmed. Well, wait. She said originally in her declaration, she said she didn't know why the gangs hurt her father. And then she said on testimony, oh, they hurt her father because they were trying to recruit her into the gang. Well, that's a completely different basis, isn't it? I think on her declaration, she said – and I have her declaration on page 287 of the – she says, I don't know who they are. I know that she says the people who did this to my father were gang members, and I don't know exactly who they are. I don't believe she said exactly why. She didn't mention anything about why they did this, the gang members did this to her. And as to the first point that Judge Talman brought up, this Court has found that when there is – when there is long pauses and there's certain things that are actually happening during the trial, it is incumbent on the judge to put those things on the actual record. But did he do that? I'm looking at his statements at AR 50 and 51. The Court certainly listened and observed the Respondent very carefully. The record supports the conclusion in this Court's opinion that the Respondent's long pauses between many salient pieces of testimony are indicia of lack of candor to this Court. And then he goes on, talking about hesitation in breathing and exasperation at times when they were waiting for answers and difficult questions. I mean, that's what a demeanor – an adverse credibility finding based on demeanor is all about. It looks to me like he did it exactly the way our cases say he has to do it. Well, I think the Court – I believe that this Court has never said just long hesitations are basis for adverse credibility finding. Well, just a minute. Don't we really look at what the I.J. says and then we see if there's substantial evidence to support what the I.J. says? I mean, we don't have to make a question of law out of this at all. This is a substantial evidence review. So we look at what the I.J. says. Is there substantial evidence underneath what he's saying? And therefore, we can't undo it. There's no need to have a question of law about what is or what isn't demeanor. That's up to the I.J., isn't it? The standard is substantial evidence. And so we look at what the I.J. had in front of it, him or her. And then we say, is there substantial evidence to sustain that? Right. You're not arguing we can't make a credibility analysis based on demeanor alone, are you? No, I'm saying there has to be specific and cogent reasons for an adverse credibility finding. That's what this Court has said. But why didn't those, what I just read to you, why doesn't that meet an articulation of why the judge made a credibility finding based on demeanor? That's what our cases don't cite to any specific factors. What they say is you have to articulate and tell us what it was about the test, the applicant's demeanor that led you to conclude that he or she was not being truthful. That's absolutely right. The Court has said there has to be specific and cogent reasons for the adverse credibility finding. Doesn't that meet that requirement, the language I just read to you? We don't believe so because when you have an adverse credibility finding, the specific cogent reason standard provides that you have to actually specify the inconsistencies in the testimony that the person is providing. Now, when you're on a demeanor finding, there is no inconsistency. If you're going to go on an inconsistency finding, yes, maybe. We're on a demeanor finding. So why are we arguing inconsistency there? You argue about what did the court see. If you have no problem with a demeanor finding, which you said you didn't, then at that point I'm left with saying, did the IJ sufficiently describe what he determined to be bad demeanor such that he can make the finding? That's all I've got to do. Isn't that true? But, well, that's partly true, yes. But the judge, like I first argued, didn't even make an adverse credibility finding in this case explicitly, number one. Two, he fully ignored the evidence on redirect based on his own indication  that the defendant had a bad demeanor finding. And, well, let me ask you on a whole other field. Let's assume she was creditable. Didn't the IJ and the BIA also determine, though, that she didn't have the nexus between a persecution ground and one of the criteria? Because we've got Ninth Circuit cases that say that recruitment into gangs is not a basis for the social, you know, category or anything that would give her a protected ground anyway. Well, under Colmenar, the Court was faced with the same situation where it required that the Court found that the Petitioner only needs to require the IJs kind of potentially affect the outcome of the case. Here, there was no analysis based on the fact that she's a female. There was no analysis that the fact that her sister was also threatened, the fact that her family was threatened as a particular social group, partly the family this Court has found may be, may have been a particular social group. Also, the fact that she's a female. I think in the 28-day motion we indicated in Perdomo v. Holder, this Court analyzed whether a young Guatemalan female can be a cognizable social group and found that it had to be remanded back to the court, to the BIA for that determination. All right. But so far, I mean, there's this Romos-Lopez case and the Santos-Lemus case that both say that recruitment into gangs is not a ground. That is true. The recruitment cases came down in 2008, I believe, after this. And they said there is recruitment, it's not. And that is absolutely right. But I'm saying there was incomplete data here, incomplete evidence submitted because of the fact that a lot of the other possible nexuses were not evaluated given the lack of full and fair hearing. And that was part of the problem here. Thank you, Mr. Ross. You're a minute and a half over your allotted time. I'll give you a minute on rebuttal. Let's hear from Ms. Carmichael. Thank you. Good morning. May it please the Court, Amy Carmichael for the respondent. There are two different issues before the Court today. I think the most important one and what we've been focusing on so far is the adverse credibility determination with asylum. But I would like to note that there was also an issue regarding adjustment of status. Substantial evidence supports the conclusion that under the REAL-ID Act, the immigration judge made a proper adverse credibility determination. Under the REAL-ID Act, the IJ is permitted to consider the totality of the circumstances and all of the relevant factors, including demeanor, candor, responsiveness, in addition to inconsistencies. Additionally, it's not required that the inconsistency go to the heart of the claim, and there's also no longer a presumption of credibility. This Court owes special deference to demeanor findings by immigration judges because the immigration judge is in the best position to make the firsthand observations of the petitioner, many of which don't translate well into a paper record. In this case, the immigration judge provided detailed analysis of the petitioner's demeanor, noting long pauses between many salient pieces of testimony, hesitations that are replete within the record, exasperation at times, and breathing in a difficult manner at some of the questions posed. The immigration judge not only stopped the proceedings twice to permit the petitioner to compose herself, but essentially let her strike the original testimony that was replete with inconsistencies. But the problems continued on cross-examination and redirect. Ms. Carmichael, can you help me? I didn't understand what the immigration judge meant when he said, I'm striking everything, and I'm paraphrasing, we're starting afresh at the point that he reverted to the grava procedure. All right. So initially the petitioner got up and she was testifying, and she was having extraordinary problems relaying any of her testimony. I understand all that. I understand why it became almost impossible to proceed because she was so emotional and having such a difficult time delivering her testimony. But what did the I.J. mean? I believe what the I.J. meant was that the I.J. was permitting her to substitute her affidavit for the testimony on direct examination. So the significance of that is that we cannot look at all of that which happened prior? I mean, the immigration judge limited himself in that way, so I believe that's correct. So when he says at page ER 138, line 15, okay, so it's accepted, meaning the grava application, and the inconsistencies will basically be deleted at this point. Go ahead. It's like we're resetting the clock, wiping the slate clean. That testimony never happened. He was giving her an additional chance to sort of rehabilitate her testimony, I believe. And at that point she had multiple inconsistencies, none of which the immigration judge relied on when he wrote his ultimate decision. The inconsistency that he relied on happened during her redirect examination. Is that required by the DHS regulation? No, I don't think it was required. I think the immigration judge was just extending her an opportunity to present the best case that she could. Sort of giving her a break. Right. And under the circumstances, she still continued to have problems with her testimony, and the immigration judge then concluded that under the circumstances, despite the fact that she had received this break, she was still unable to present a credible demeanor or consistent testimony. Did the I.J. confront her with these alleged inconsistencies? The ‑‑ if you're looking for a particular page number where he said first you said X, then you said Y, you're not going to find it. The inconsistency that he points to happened at the end of her redirect examination. It was the first time that she had said that. And they did not challenge her with that. But he had warned her multiple times regarding her demeanor, and that was one of the primary things that he relied upon. I acknowledge that there's a problem, a potential problem, with the fact that he didn't challenge the inconsistency. Right, because he has a duty to do that, doesn't he? Right. But under the Real ID Act, I believe that the demeanor finding that the immigration judge made under the totality of the circumstances is supported by the record and is sufficient on its own to support an adverse credibility determination. Right. So the government is not going to argue that confrontation is not necessary when the petitioner relies on the affidavit? That's an unsettled question in this Court. I understand it's unsettled. I'm asking. I suppose the government's not going to argue that here. I don't think it's necessary to reach that issue in this case. All right. What is your position on the nexus issue? The ‑‑ I think that the immigration judge made, arguably found that there was no nexus based on, under the Real ID Act, the requirement that there be one central reason for the harm, but I will also note that that issue wasn't thoroughly argued before the Board. So in your book, because it wasn't thoroughly argued and because we're having a tough time understanding what the IJ did because it was kind of intertwined with the IJ's credibility finding, you'd suggest we remand? If you find problem with the adverse credibility determination, then I think that the issues regarding, for example, all of the different particular social groups that the petitioner is now discussing, none of those were raised or decided by the agency, and that's a very important issue. I see this first sentence in the second paragraph of the BIA's decision as we separately note that given the record before the immigration judge, we find no clear error in his determination that the respondent failed to provide reliable testimony and evidence to adequately demonstrate the requisite nexus to one of the statutorily protected grounds. Now, what, your position is that isn't really, though, a full decision on that issue? I think it's complicated because of the way the two issues are intertwined. I think that there is definitely a strong argument that in this case, given the arguments that they raised regarding the recruitment, that that is not, that there is not a nexus between the case that she's presented and a protected ground, whether she's credible or not. But it's also because that's so intertwined, the way that the board wrote it and the way that the immigration judge wrote it, wrote the decision, because those issues are so intertwined. If there's a problem with the credibility finding, I think the court would really have to be careful about independently concluding that there's just no protected ground. And also, I think, I mean, you could comment to this, but as I was reading it, the IJ made a finding. She didn't have a basis to claim past persecution or nexus, but that finding didn't include the testimony, if credible, that the gangs were recruiting her and attacked her father because she wouldn't join. Right. So the under this court's case law, I think it's clear that even if the gangs did attack her father because she refused to join, that that is not on account of a protected ground. But the IJ, because the IJ didn't credit that testimony, I think it's more of a futility argument than based on the specific finding that she failed to demonstrate a particular social group and a nexus between the particular groups. I'm just curious, how do you distinguish, or can you, the case that was cited by opposing counsel just a couple of weeks ago, this Perdomo v. Holder? Well, there's a couple of things. The first is that the petitioner did not raise any arguments before the immigration judge or the board that based on her status as a woman, she was specifically targeted. Instead, her arguments were all about recruitment. Additionally, that was a finding that was specific to the record, and the Ninth Circuit did not actually say all women in that case, all women in Guatemala are a particular social group. Instead, it found error in the board's analysis and remanded for the board to conduct the ultimate finding. That was a different record, and there were different issues raised in that record. On this record, I don't think that that case is particularly instructive because the petitioner did not raise those arguments before the board, and the record doesn't support the conclusion that it would be possible for all women in El Salvador to be a particular social group. But, again, this depends on how the court views the immigration judge and board's decision regarding nexus. I have no other questions. All right. Therefore, I believe the court should deny the petition for review. Thank you. Very well. Mr. Rossi, I'll give you a minute on rebuttal. Thank you, Your Honor. I think the issue of remand came up and whether this case should be remanded. Of course, our position is remand is appropriate in this case, and I can tell you on the record I think it's clear that the Respondent also had an application for adjustment of status pending with the judge, which the judge denied as well. We didn't have a chance to discuss that. Well, but we really haven't. She didn't talk about it and you haven't. But it doesn't seem to me that your client had an immediately available visa. That's correct. She does now. She didn't then. Right. She didn't then. According to the judge, they said they purged it, which, again, it brings up the whole issue that's pretty much discussed in the briefs, that there was no – obviously there was no notice to this. Well, you'd agree then if she doesn't have an immediately available visa, then she doesn't have the liberty, interest, and the discretionary relief, right? I think our position was that there is the purging of her visa application or her visa petition because there was no notice of it. And the judge actually found that in the decision. He pointed out that she found her credible. So are we really looking at whether there was a properly purging? That's correct. Is that what you're saying? That's exactly right. But I'm saying that now there is a petition that's also current, and it is eligible. So with that, I rest. Thank you. Very well. Thank you both very much. The case just argued is submitted. The next two cases on the briefs will be submitted.
judges: Gilman, Tallman, Smith